**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS M. McGRAW, NANCY N. McGRAW, DONALD HARMS, PATRICIA PESTKA and DALE MONTROSS, | | |
| Plaintiffs, | | No. 08-CV-2064-LRR |
| vs. | | **ORDER** |
| WACHOVIA SECURITIES, LLC, as successor in interest to AG EDWARDS, INC., KAREN BALLHAGEN and WELLS FARGO INVESTMENT GROUP, INC., as successor in merger to SECURITIES CORPORATION OF IOWA, | | |
| Defendants. | | |

_____

*TABLE OF CONTENTS*

**I.     INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**II.    PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

**III.   SUBJECT MATTER JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . **4**

**IV.    STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

**V.     FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
   **A.   Players** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
   **B.   Investments With Wells Fargo** . . . . . . . . . . . . . . . . . . . . . **6**
   **C.   Investments With Wachovia** . . . . . . . . . . . . . . . . . . . . . . . **6**
   **D.   Lovegren's Practices** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
      **1.   McGraws & Harms** . . . . . . . . . . . . . . . . . . . . . . . . **7**
      **2.   Pestka & Montross** . . . . . . . . . . . . . . . . . . . . . . . . **7**
   **E.   Plaintiffs Discover Fraud** . . . . . . . . . . . . . . . . . . . . . . . . **8**

VI.   **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
       A.   **Summary of Arguments** . . . . . . . . . . . . . . . . . . . . . . . **8**
       B.   **Pleading Fraud With Particularity** . . . . . . . . . . . . . . . . . . . . . **9**
             1.   **Whether claims sound in fraud** . . . . . . . . . . . . . . . . . . . . **9**
                   i.    **Counts I & II** . . . . . . . . . . . . . . . . . . . . . . . . . **10**
                   ii.   **Count IV** . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
                   iii.  **Count V** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
                   iv.   **Count VI** . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
                   v.    **Count VII** . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
             2.   **Whether allegations of fraud comport with Rule 9(b)** . . . . . . **14**
                   i.    **Rule 9(b) standard** . . . . . . . . . . . . . . . . . . . . . . **14**
                   ii.   **Rule 9(b) analysis** . . . . . . . . . . . . . . . . . . . . . **14**
       3.   **Whether Plaintiffs may replead fraud claims** . . . . . . . . . . . . . . . . **16**
       C.   **Counts I & II Against Wells Fargo: Statute of Limitation** . . . . . . . **17**
       D.   **Count II—Allegation of Consideration** . . . . . . . . . . . . . . . . . . . **18**
       E.   **Counts IV & VI: Negligent Supervision & Negligence—**
             **Suitability** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**
       F.   **Pestka's Claims Against Wachovia** . . . . . . . . . . . . . . . . . . . . . . **19**
       G.   **Montross's Claims Against Wells Fargo** . . . . . . . . . . . . . . . . . . **20**
       H.   **Whether Remaining Claims Comport With Rule 12(b)(6)** . . . . . . . . **20**

VII.  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

## I.  INTRODUCTION

The matters before the court are: (1) the Motion to Dismiss the Second Amended Complaint (docket no. 48), filed by Defendant Wachovia Securities, LLC ("Wachovia"), as successor in interest to AG Edwards, Inc.; and (2) the Amended Motion to Dismiss the Second Amended Complaint (docket no. 62), filed by Defendant Wells Fargo Investment Group ("Wells Fargo"), as successor in merger to Securities Corporation of Iowa. The court refers to the motions as the "Wachovia Motion" and the "Wells Fargo Motion," respectively. The court refers to the Wachovia Motion and the Wells Fargo Motion together as the "Motions." In the Motions, Wells Fargo and Wachovia move to dismiss the Second Amended Complaint (docket no. 43) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## II. PROCEDURAL BACKGROUND

On September 30, 2008, Plaintiffs Thomas M. McGraw, Nancy N. McGraw, Donald Harms, Patricia Pestka and Dale Montross ("Plaintiffs") filed a Petition at Law ("Petition") (docket no. 4) in the Iowa District Court for Blackhawk County, case no. LACV106830. The Petition alleged a series of securities violations and tort claims against A.G. Edwards & Sons, Inc. On October 28, 2008, A.G. Edwards & Sons, Inc., removed the Petition to this court pursuant to 28 U.S.C. § 1441.

On January 20, 2009, Plaintiffs filed an Amended Complaint (docket no. 18). In the Amended Complaint, Plaintiffs added Defendants Karen Ballhagen ("Ballhagen") and Wells Fargo. The causes of action Plaintiffs alleged in the Amended Complaint were identical to the claims that Plaintiffs alleged in the Petition.

On April 22, 2009, Plaintiffs filed a Second Amended Complaint (docket no. 43). In the Second Amended Complaint, Plaintiffs substituted Wachovia for A.G. Edwards and Sons, Inc. Plaintiffs also changed the nature of their claims. Presently, Plaintiffs seek relief for the following causes of action: (1) two violations of the Iowa Uniform Securities Act, Iowa Code chapter 502 (Counts I and II); (2) common law fraud (Count III); (3) negligent supervision (Count IV); (4) negligent misrepresentation (Count V); (5) "negligence—suitability" (Count VI); and (6) breach of fiduciary duty (Count VII).

On May 11, 2009, Wachovia filed the Wachovia Motion. On May 28, 2009, Plaintiffs filed a Resistance (docket no. 53) to the Wachovia Motion. On June 1, 2009, Wachovia filed a Reply.

On June 25, 2009, Wells Fargo filed a Motion to Dismiss the Second Amended Complaint ("Initial Wells Fargo Motion") (docket no. 55). On July 9, 2009, Plaintiffs filed a Resistance (docket no. 59). On July 13, 2009, Wells Fargo filed the instant Wells Fargo Motion to bring the Initial Wells Fargo Motion into compliance with the Local Rules. Aside from the addition of a table of contents and a table of authority, the instant

Wells Fargo Motion is identical to the Initial Wells Fargo Motion.   Accordingly, the court construes Plaintiffs' Resistance as a resistance to the instant Wells Fargo Motion.  On July 15, 2009, Wells Fargo filed a Reply.

The parties request oral argument on the Motions.  The court finds oral argument is unnecessary.  The Motions are fully submitted and ready for decision.

### III.  SUBJECT MATTER JURISDICTION

There is complete diversity of citizenship among the parties.   The amount in controversy exceeds $75,000.  The court is satisfied that it has diversity subject matter jurisdiction over the instant action.  *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [. . .] citizens of different States[.]").

### IV.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that the court may dismiss a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A plaintiff need not provide "detailed" facts in support of its allegations; however, the pleadings requirement in Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*,  550 U.S. at 555).   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).   This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the [claim]." *Twombly*, 550 U.S. at 556.

In a Rule 12(b)(6) motion, the court must accept as true all of the factual allegations in the complaint, "no matter how skeptical the court may be." *Iqbal*, 129 S. Ct. at 1959. "The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel." *Id.*

## V. FACTS

Accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving parties, the facts are:

### A. Players

Thomas M. McGraw and Nancy N. McGraw (the "McGraws") are citizens of Iowa. Donald Harms ("Harms") is a citizen of Illinois. Patricia Pestka ("Pestka") is a citizen of California. Dale Montross ("Montross") is a citizen of Texas.

Wachovia, a Delaware corporation, is the successor in interest to A.G. Edwards & Sons, Inc. Wells Fargo, a Delaware corporation, is the successor by merger to Securities Corporation of Iowa ("SCI"). Wachovia and Wells Fargo are engaged in the business of providing investment advice to customers. Wachovia and Wells Fargo also "sell[], broker[] and market[] securities." Second Amended Complaint at ¶¶ 5 & 6.

Ballhagen is a citizen of Minnesota. From 1999 until 2001, Ballhagen worked as a broker, broker-dealer, investment advisor, employee and agent for Wells Fargo. From 2001 to the present, Ballhagen has been a broker, broker-dealer, investment advisor, employee and agent for Wachovia.

Paul Lovegren ("Lovegren"), who is not a party, is now deceased. From December of 1996 until 2001, Lovegren worked as a broker, broker-dealer, investment advisor, employee and agent for Wells Fargo. After his employment with Wells Fargo ended, Lovegren began working as a broker, broker-dealer, investment advisor, employee and agent for Wachovia.

## B. Investments With Wells Fargo

From May of 1996 until some point in 2001, the McGraws were Wells Fargo clients. From 1983 until some point in 2001, Harms was a Wells Fargo client. From 1999 until 2001, Pestka was a Wells Fargo client. Lovegren and Ballhagen were brokers, broker-dealers and investment advisors for the McGraws, Harms and Pestka. Lovegren informed the McGraws, Harms and Pestka that Ballhagen was his partner and that she would assist, support and aid Lovegren with their accounts.

## C. Investments With Wachovia

At some point in 2001, Wells Fargo terminated Lovegren's employment. Lovegren and Ballhagen subsequently began working for Wachovia as brokers, broker-dealers and investment advisors. The McGraws, Harms and Pestka authorized Lovegren and Ballhagen to close their Wells Fargo accounts and transfer the proceeds to Wachovia. This allowed Lovegren and Ballhagen to continue to manage and advise them with respect to their investments.

From 2001 until 2006, the McGraws, Harms and Pestka were customers of Wachovia. From approximately 2004 until 2006, Montross was a Wachovia customer. Lovegren and Ballhagen were the Wachovia brokers, broker-dealers and investment advisors for Plaintiffs during this time.

## D. Lovegren's Practices

Plaintiffs relied upon the investment advice they received from Lovegren and Ballhagen. Plaintiffs believed Lovegren and Ballhagen "were providing them with financial and investment advice and were acting in [Plaintiffs'] best interests." Second Amended Complaint at ¶31. Plaintiffs believed their investments "were safe, issued[] or made through or with the authority and approval of Wells Fargo and Wachovia, respectively." *Id.*

## 1. McGraws & Harms

While employed by Wells Fargo and Wachovia, Lovegren occasionally contacted the McGraws and Harms from the offices of Wells Fargo or Wachovia. Lovegren made these contacts to solicit capital investment funds. Lovegren advised the McGraws and Harms to sell their conservative investments and place the proceeds into a discretionary account held by Lovegren. Lovegren represented that he would invest these proceeds in securities issued by and through Wells Fargo and Wachovia.

Lovegren occasionally raised opportunities for a "special investment" with the McGraws and Harms. *Id.* at ¶ 21. Lovegren told the McGraws and Harms that the "special investment" required them to be "sophisticated" investors. *Id.* Lovegren told the McGraws and Harms they were not sophisticated investors. Lovegren said that he would invest their assets for them through his own company and "under the authority, approval, and oversight" of Wells Fargo and Wachovia. *Id.* Lovegren assured the McGraws and Harms that the "special investment" was "safe, reasonable, legitimate[] and approved by" Wells Fargo and/or Wachovia. *Id.* at ¶ 22.

"To prove, substantiate, legitimize[] and reinforce the validity and authority for his statements and actions," Lovegren used his employers' offices and involved his colleagues. *Id.* at ¶ 23. Lovegren processed transactions for the McGraws and Harms through the "facilities" of Wachovia and Wells Fargo. *Id.*

## 2. Pestka & Montross

From 2001 through 2006, Lovegren advised Pestka to invest in Bond Management, Inc. *Id.* at ¶ 26. From 2004 through 2006, Lovegren advised Montross to invest in Bond Management, Inc. *Id.* at ¶ 24. Lovegren assured Pestka and Montross that Bond Management, Inc. "was safe, reasonable, legitimate[] and [. . .] issued by A.G. Edwards." *Id.* at ¶¶ 25, 26. Lovegren also told Pestka and Montross that Bond Management, Inc. was "a division of A.G. Edwards." *Id.*

In September or October of 2006, Lovegren contacted Pestka and informed her that "he was semi-retiring, re-locating to Kansas[] and would be working at the Kansas division of Bond Management Inc., a division of A.G. Edwards." *Id.* at ¶ 27 (internal quotation marks omitted). Pestka followed Lovegren's advice. She closed her account and remitted the proceeds to Lovegren to invest them in Bond Management, Inc. In May of 2006, Pestka remitted additional funds to Lovegren for investment in Bond Management, Inc.

Between May 21 and May 23, 2006, Lovegren visited Pestka at her home in California. During the visit, Lovegren and Pestka discussed Pestka's investments. At that time, Lovegren placed at least four telephone calls to Ballhagen to obtain "'rates' on potential investments." *Id.* at ¶ 30. During these calls, Ballhagen was located at an A.G. Edwards office in Iowa. Pestka was familiar with Ballhagen's voice and heard Ballhagen's voice each time Lovegren placed a telephone call to her.

### E. Plaintiffs Discover Fraud

Lovegren "stole, converted[] and embezzled [P]laintiffs' funds." *Id.* at ¶ 32. In August of 2006, Lovegren disappeared. In October of 2006, Plaintiffs discovered Lovegren's fraud. In May of 2007, Lovegren's body was discovered in a wooded area in Cedar Falls, Iowa.

### VI. ANALYSIS

### A. Summary of Arguments

In their Motions, Wachovia and Wells Fargo argue that the court should dismiss: (1) Counts I-VII because Plaintiffs failed to plead fraud with the requisite particularity; (2) Count II because Plaintiffs failed to allege any consideration with respect to the alleged fraudulent investment; and (3) Counts IV and VI, because they are not allowed under Iowa law. Additionally, Wachovia argues that the court should dismiss Pestka's claims against it because she had no reason to believe Lovegren was investing her funds with Wachovia. Wells Fargo argues that the court should dismiss Counts I and II because they are barred

by the applicable statute of limitation. Wells Fargo also argues that the court should dismiss Montross's claims against it because he was never a Wells Fargo client.

## B. *Pleading Fraud With Particularity*

Wachovia and Wells Fargo argue that the court should dismiss all counts in the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because they are not pled with the requisite particularity under Federal Rule of Civil Procedure Rule 9(b). Plaintiffs apparently are under the mistaken belief that notice pleading rules apply. *See* Plaintiffs's Br. (docket no. 53-2), at 6 ("Once this case moves beyond the notice pleadings stage, discovery will undoubtedly provide the defendant with ample information with which to defend itself and to further its motion practice.").

### 1. *Which claims sound in fraud*

The threshold issue in this argument is to identify which of Plaintiffs' claims are fraud claims. Wachovia and Wells Fargo argue that all of Plaintiffs' claims are fraud claims. *See* Brief in Support of Wachovia Motion (docket no. 48-2), at 5; Brief in Support of Wells Fargo Motion (docket no. 62-2), at 5 ("Notwithstanding the particular labels Plaintiffs use, all of Plaintiffs' [. . .] claims are *fraud* claims[.]") (emphasis in original). Plaintiffs concede that Count III (Common Law Fraud) sounds in fraud. Plaintiffs dispute that any of their other claims sound in fraud.

"Parties must plead all averments of fraud with particularity, even if the claims are not expressly labeled as 'fraud.'" *In re ADC Telecomm., Inc., ERISA Litig.*, No. 03-2989 ADM/FLN, 2004 WL 1683144, *2 (D. Minn. July 26, 2004) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-08 (9th Cir. 2003)). In Iowa, fraud is comprised of the following elements: "(1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent [to deceive]; (6) justifiable reliance; and (7) resulting injury." *Smidt v. Porter*, 695 N.W.2d 9, 22 (Iowa 2005); *see also Estate of Butler v. Maharishi Univ. of Mgmt.*, 589 F. Supp. 2d 1150, 1158 (S.D. Iowa 2008) (Gritzner, J.) (same). "The first three elements

require a material misrepresentation to be made." *CNH Capital Am. LLC v. McCandless*, No. C05-2087, 2007 WL 1498357, *9 (N.D. Iowa May 18, 2007) (Scoles, Mag.) (citing *Magnusson Agency v. Pub. Entity Nat'l Co.-Midwest*, 560 N.W.2d 20, 29 (Iowa 1997)). "'A fraudulent misrepresentation claim also requires that the defendant knew the representation was false (scienter), and that defendant intended to deceive the plaintiff.'" *Id.* (citing *Magnusson*, 560 N.W.2d at 28).

First, the court considers which of Plaintiffs' claim sound in fraud and, therefore, are subject to Rule 9(b). Then, the court considers whether any of Plaintiffs' fraud claims fail to comply with Rule 9(b).

### i. Counts I & II

Counts I and II allege violations of the Iowa Uniform Securities Act. Specifically, Plaintiffs allege violations of Iowa Code § 502.509.2, "[l]iability of seller to purchaser," and § 502.509.6, "[l]iability for investment advice." Plaintiffs argue that these claims are not fraud claims and, therefore, are not subject to Rule 9(b).

Claims under the Iowa Uniform Securities Act must be pleaded with particularity pursuant to Rule 9(b). *See Martino-Catt v. E.I. DuPont de Nemours & Co.*, 213 F.R.D. 308, 323 (S.D. Iowa 2003) (Pratt, J.) (applying Rule 9(b) standard to claims under Iowa Uniform Securities Act). Other federal district courts apply Rule 9(b) to claims arising under their state's version of the Uniform Securities Act. *See, e.g.*, *Kahn v. Ran*, 08-CV-14417, 2009 WL 1138504, *11 (E.D. Mich. Apr. 27, 2009) (applying Rule 9(b) standard to claims arising under Uniform Securities Act); *Houston v. Seward & Kissel, LLP*, No. 07CV6305(HB), 2008 WL 818745, *6 (S.D.N.Y. Mar. 27, 2008) (same); *As You Sow v. AIG Fin. Advisors, Inc.*, 584 F. Supp. 2d 1034, 1046 (M.D. Tenn. 2008) (same); *Furlong v. Appiant Techn., Inc.*, No. 4:03CV1091RWS, 2005 WL 1213939, *5 (E.D. Mo. Apr. 14, 2005) (same).

Plaintiffs have not provided the court with any reason to depart from the common

practice of applying Rule 9(b) to claims arising under the Iowa Uniform Securities Act. Accordingly, the court shall apply Rule 9(b) to Counts I and II.

### ii. Count IV

Count IV alleges a claim for negligent supervision. Plaintiffs allege that Wachovia and Wells Fargo had a duty to supervise and control Lovegren and Ballhagen, and they failed to exercise reasonable care in doing so. Wachovia and Wells Fargo do not point to any authority that states that a claim for negligent supervision sounds in fraud or is governed by Rule 9(b).

To prove a claim of negligent supervision, a plaintiff must show:

> (1) the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time the employee engaged in wrongful or tortious conduct;
>
> (2) through the negligent supervision of the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused injuries to the plaintiff; and
>
> (3) there is some employment or agency relationship between the employee and the defendant employer.

*Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 680 (Iowa 2004).

Negligent supervision is a negligence claim—not a fraud claim. The court recognizes that Plaintiffs' negligent supervision claim relates to Lovegren and Ballhagen's fraudulent conduct because Plaintiffs argue that Wachovia and Wells Fargo should have known about their employees' fraud. However, liability in a negligent supervision claim arises from the *employer's* conduct, that is, the conduct of Wachovia and Wells Fargo—not the *employee's* conduct. *See IMT Ins. Co. v. Crestmoor Golf Club*, 702 N.W.2d 492, 496 (Iowa 2005) ("In a claim of negligent [. . .] supervision, the cause of action arises from the employer's own tortious conduct."). The employee's underlying tortious act, that is, Lovegren and Ballhagen's fraud, "'is simply a link in the causal chain leading to

compensable damages.'" *Id.* (quoting *Kiesau v. Bantz*, 686 N.W.2d 164, 172 (Iowa 2004)). There is no allegation that Wachovia and Wells Fargo possessed the scienter or intent to deceive that is required for a fraud claim. *Smidt*, 695 N.W.2d at 22. Rather, the Second Amended Complaint alleges that Wachovia and Wells Fargo failed to exercise reasonable care in supervising Lovegren and Ballhagen's conduct. Accordingly, the court declines to consider Count IV as a fraud claim.

### iii.    Count V

Count V alleges a claim for negligent misrepresentation. Specifically, Plaintiffs allege that Wachovia and Wells Fargo "negligently failed to disclose material information to the [P]laintiffs, including but not limited to, [the] non-existence of securities, [the] non-registration [of] securities, the business relationship between [Defendants], the extent of [the] investment risk, and the prospect of asset loss and embezzlement." Second Amended Complaint at ¶ 73. Defendants do not point to any authority demonstrating that negligent misrepresentation sounds in fraud or is subject to Rule 9(b).

Plaintiffs' allegation that Wachovia and Wells Fargo failed to exercise reasonable care demonstrates that Count V is a negligence claim—not a fraud claim. *See Barske v. Rockwell Int'l Corp.*, 514 N.W.2d 917, 924 (Iowa 1994) (stating that element of negligent misrepresentation claim is speaker's failure to exercise reasonable care in making representation to another). Count V does not allege that Wachovia and Wells Fargo acted with scienter or intent to deceive Plaintiffs. Accordingly, Count V is not deemed to be a claim for fraud.

### iv.    Count VI

Count VI alleges a claim entitled "Negligence—Suitability." Second Amended Complaint at 10. Plaintiffs allege that Wachovia and Wells Fargo "had a duty to exercise the care and skill of persons in the same profession in determining suitable investment strategies for [Plaintiffs] and in providing investment advice." *Id.* at ¶ 81. Again,

Defendants do not point to any authority demonstrating that a claim for "Negligence—Suitability" sounds in fraud or is subject to Rule 9(b).

This claim is a negligence claim. The prima facie elements of a negligence claim are: duty; breach of duty; actual and proximate causation; and damages. *Winder v. Franck*, No. 01-1783, 2003 WL 21542471, *3 (Iowa Ct. App. July 10, 2003) (citing *Walls v. Jacob N. Printing Co., Inc.*, 618 N.W.2d 282, 285 (Iowa 2000)). Plaintiffs allege that Wachovia and Wells Fargo failed to exercise reasonable care in determining suitable investment strategies for Plaintiffs. Count VI does not allege or indicate that Wachovia and Wells Fargo possessed scienter or acted with intent to deceive Plaintiffs. Accordingly, Count VI is not a claim for fraud.

### v.    Count VII

Count VII alleges a claim for Breach of Fiduciary Duty. "[W]hen the actual breach [of fiduciary duty] alleged is imprudent investment choices, rather than a straightforward claim of breach by misrepresentation, Rule 9 need not be invoked." *ADC Telecomm.*, 2004 WL 1683144 at *2; *see also Burt on Behalf of McDonnell Douglas Corp. v. Danforth*, 742 F. Supp. 1043, 1051 (E.D. Mo. 1990) (stating that court only applies Rule 9(b) to claim for breach of fiduciary duty to the extent that it is based upon allegation of fraud and that Rule 9(b) does not apply to breach of fiduciary duty claim to the extent it alleges recklessness or neglect).

It appears that Plaintiffs allege their claim for breach of fiduciary duty under theories of fraud, recklessness and/or negligence. *See* Second Amended Complaint at ¶ 92 (alleging that, when they breached their fiduciary duties to Plaintiffs, Wachovia and Wells Fargo's conduct "constituted a willful and wanton disregard for [Plaintiffs'] rights."). Accordingly, to the extent Count VII alleges a breach of fiduciary duty under a fraud theory, the court shall analyze Count VII pursuant to the Rule 9(b) standards. Conversely, to the extent Count VII alleges a breach of fiduciary duty claim under a

negligence or recklessness theory, the court shall not apply Rule 9(b).

### 2. *Whether allegations of fraud comport with Rule 9(b)*

Next, the court considers whether Plaintiffs pled the allegations of fraud in Counts I, II, III and VII with the requisite particularity under Rule 9(b).

#### i. *Rule 9(b) standard*

Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) requires a party to plead "'the who, what, when, where[] and how: the first paragraph of any newspaper story.'" *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)), *cert. denied*, 498 U.S. 941 (1990); *see also United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) ("[T]he complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."). "In a "Rule 9(b) [motion], [the court] accept[s] as true the factual allegations contained in the complaint and draw[s] all reasonable inferences in favor of the nonmoving party." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 781 (8th Cir. 2009). "'Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.'" *S.E.C. v. Brown*, No. 06-1213 (JRT/FLN), 2009 WL 2163500, *2 (D. Min. July 20, 2009) (quoting *Commercial Prop. Inv., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

#### ii. *Rule 9(b) analysis*

Due to the similar nature of Plaintiffs' allegations of fraud in Counts I, II, III and

VII, the court considers the allegations of fraud in these claims collectively. These allegations of fraud fail to satisfy the pleading requirements of Rule 9(b) in several respects.

First, Plaintiffs fail to identify which statements or omissions were untrue or material. For example, Ballhagen and Lovegren represented to the McGraws and Harms that a "special investment" opportunity was available, but only for "sophisticated" investors, which the McGraws and Harms were not. Second Amended Complaint at ¶ 21. It is unclear whether Plaintiffs are alleging that (1) no "special investment" ever existed; (2) "sophisticated" status was not necessary to participate in the "special investment"; and/or (3) the McGraws and Harms were, in fact, "sophisticated investors." This confusion extends to representations involving the other Plaintiffs. For example, Pestka and Montross allege that Lovegren recommended that they invest in "'Bond Management, Inc.', a division of A.G. Edwards," and that this investment "was safe, reasonable, legitimate" and issued by A.G. Edwards. Second Amended Complaint at ¶ 24. It is unclear whether Montross and Pestka allege that Bond Management, Inc. (1) never existed; (2) was not a division of A.G. Edwards; (3) was not a safe, reasonable or legitimate investment; and/or (4) was not issued by A.G. Edwards. Pestka also alleges that Lovegren told her that he was going to partially retire, move to Kansas, work in the Kansas division of Bond Management, Inc. and that he had obtained rates from Ballhagen while visting Pestka. It is unclear whether Pestka alleges that (1) Lovegren never actually partially retired; (2) never relocated; (3) never relocated to Kansas; (4) whether a Kansas division of Bond Management, Inc. existed, and if so, whether Lovegren was working at that location; (5) whether Lovegren placed a telephone call to Ballhagen; and (6) whether Lovegren obtained rates from Ballhagen.

Second, Plaintiffs fail to allege where the fraudulent conduct occurred. Although Plaintiffs allege that Lovegren contacted them "from the offices of [Wachovia and Wells

Fargo]" and used the "facilities" of Wachovia and Wells Fargo to conduct business, Plaintiffs do not state where these offices were located. Second Amended Complaint at ¶¶ 20, 23. Lovegren and Ballhagen could have been working out of various office locations throughout Iowa and other states.[1] In order to provide Wachovia and Wells Fargo with a meaningful opportunity to defend themselves, they must have a general understanding about where the fraudulent activity took place. *Brown*, 2009 WL 2163500, *2.

Third, Plaintiffs do not sufficiently allege how Lovegren and Ballhagen committed the alleged fraud. Plaintiffs generally state that Lovegren and Ballhagen "stole, converted[] and embezzled" Plaintiffs' funds (Second Amended Complaint at ¶ 32). However, this allegation does not provide Wachovia or Wells Fargo with the crucial information they need. For instance, Plaintiffs do not allege whether Lovegren stole some or all of the funds that they provided to him. In other words, it is unclear whether Plaintiffs allege that Lovegren (1) simply stole Plaintiffs' money after lying to them about certain investment opportunities; or (2) created and used "special investments" and "Bond Management, Inc." to funnel Plaintiffs' funds to himself.

In light of the foregoing, the court concludes that Plaintiffs' allegations of fraud do not comply with Rule 9(b). Due to the unclear manner in which Plaintiffs pled fraud, Wachovia and Wells Fargo do not have a meaningful way to defend against them. Therefore, to the extent that the Second Amended Complaint alleges fraud claims, the court shall dismiss them.

### 3. *Whether Plaintiffs may replead fraud claims*

In their Resistances to the Motions, Plaintiffs request leave to amend the Second

---

[1] The court recognizes that one of Pestka's allegations of fraud indicates that the fraud took place in Iowa and California. However, for the various other reasons discussed in this portion of the analysis, Pestka's allegations of fraud fail to comply with Rule 9(b).

Amended Complaint in the event that the court dismisses their fraud claims under Rule 9(b). Plaintiffs state that they would re-plead their fraud claims with the requisite particularity if they were allowed to amend the Second Amended Complaint.

Typically, a plaintiff is permitted to amend a complaint to replead fraud with particularity. *Kuiper v. Int'l Flavors & Fragrances, Inc.*, 240 F.R.D. 438, 448 (N.D. Iowa 2007) (Bennett, J.). However, Plaintiffs have already amended their pleadings twice in an effort to conform with Rule 9(b) standards. Further, Plaintiffs have failed to file a formal motion with the court that specifically requests leave to amend. Even if the court construes Plaintiffs' request to amend as a motion to amend, Plaintiffs have failed to comply with Local Rule 15. Local Rule 15 requires a party seeking to amend a pleading to "describe in the motion the changes sought, and [. . .] attach [. . .] the proposed amended or supplemented pleading." LR 15. Plaintiffs neither filed a proposed third amended complaint nor did they describe the changes they would make to avoid dismissal under Rule 9(b). Because Plaintiffs have failed to comply with Local Rule 15, the court deems it appropriate to deny their request to amend the Second Amended Complaint. *See Drobnak v. Andersen Corp.*, 561 F.3d 778, 787 (8th Cir. 2009) (affirming district court's decision to deny a plaintiff leave to replead allegations of fraud to comply with Rule 9(b) due to plaintiff's failure to comply with local rules governing amendment of pleadings).

### C. Counts I and II Against Wells Fargo: Statute of Limitation

Although the court shall dismiss Counts I and II against Wells Fargo because they fail to conform to Rule 9(b), the court notes that it would dismiss these claims on an alternate basis. Wells Fargo argues that Counts I and II should be dismissed because they are barred by the statute of limitation in Iowa Code § 502.509.10.b. This statute provides: "A person shall not obtain relief [under Iowa Code § 502.509.2 & .6] unless the action is instituted within the *earlier* of two years after discovery of the facts constituting the violation or five years after the violation." Iowa Code § 502.509.10.b (emphasis added).

17

Under this provision, Plaintiffs were required to initiate their § 502.509 claims against Wells Fargo by the earlier of (1) two years after discovery of the violation, that is, by October of 2008, or (2) no later than five years after the violation, that is, in 2006.[2] *Id.* The "earlier" of those dates is 2006. Plaintiffs did not initiate the instant action until September 30, 2008. Accordingly, Plaintiffs' § 502.509 claims against Wells Fargo in Counts I and II are barred and should be dismissed.

### D. Count II—Allegation of Consideration

Wachovia and Wells Fargo raise another challenge to Count II, a violation of Iowa Code § 502.509.6 (liability for investment advice). Because the court dismisses Count II on other grounds, it need not address this argument.

### E. Counts IV & VI: Negligent Supervision & Negligence—Suitability

Wachovia and Wells Fargo argue that Iowa law does not recognize the claims alleged in Counts IV and VI, negligent supervision and negligence—suitability. In support of their arguments, Wachovia and Wells Fargo contend: "Duties to 'supervise' and to make 'suitable' investments are referenced in the self-regulatory rules that govern the conduct of broker-dealers [. . .], but these rules provide for no private right of action." Brief in Support of Wachovia Motion at 9; Brief in Support of Wells Fargo Motion at 10-11.

Violations of securities regulations, by themselves, do not give rise to a private cause of action. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 200 (3d Cir. 1990). However, Counts IV and VI do not allege violations of securities regulations. Rather, they allege negligence claims. As stated above, the prima facie elements of a negligence claim are: duty; breach of duty; actual and proximate causation; and damages. *Winder*, 2003 WL 21542471, *3. In Counts IV and VI, Plaintiffs allege that Wachovia

---

[2] For purposes of the instant argument, the court assumes that Lovegren's § 502.509 conduct continued until he left Wells Fargo in 2001.

and Wells Fargo had duties to (1) supervise employees, that is, Lovegren and Ballhagen, and (2) exercise professional care in determining suitable investment strategies for Plaintiffs. Plaintiffs allege that Wachovia and Wells Fargo breached those duties and that these breaches caused them to suffer damages.

The allegations in Counts IV and VI are negligence claims. These negligence claims are pled in compliance with Rule 12(b)(6) and are recognized by Iowa courts. *See, e.g.*, *Harris*, 679 N.W.2d at 680 (setting forth elements of negligent supervision claim in Iowa); *Godar v. Edwards*, 588 N.W.2d 701, 709 (Iowa 1999) (recognizing tort of negligent supervision) *Piper Jaffray & Hopwood Inc. v. Ladin*, 399 F. Supp. 292, 299 (S.D. Iowa 1975) (Stuart, J.) (recognizing the failure to provide suitable investment advice and strategy as a negligence claim).

For the reasons stated above, the court shall deny the Motions to the extent that they seek dismissal of Counts IV and VI.

## F. Pestka's Claims Against Wachovia

Wachovia argues that all of Pestka's claims against it must fail. Wachovia contends that, after Pestka closed her account with Wachovia in 2006 and remitted her funds to Lovegren, Pestka should have known that she was no longer investing with Wachovia. This argument fails for two reasons. First, from the context of the Second Amended Complaint as a whole, it appears that Pestka is seeking relief for misconduct and negligence that took place throughout the duration of her investment relationship with Wachovia, that is, from 2001 through 2006. Therefore, the fact that Pestka ended her relationship with Wachovia in 2006 is irrelevant to the question of whether Wachovia is liable to her for conduct from 2001 until 2006. Second, the issue of whether Pestka could have or should have known that she was not investing with Wachovia is a question of fact and is not appropriate for the court to consider in a Rule 12(b)(6) motion. *See Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 663 (8th Cir. 2001) ("We cannot

resolve a factual dispute on a motion to dismiss."). Accordingly, the court shall deny the Wachovia Motion to the extent that it asks the court to dismiss all of Pestka's claims against Wachovia.

### *G. Montross's Claims Against Wells Fargo*

Wells Fargo argues that all of Montross's claims against it should be dismissed because Montross was never a Wells Fargo client. Montross does not resist this argument. Accordingly, it is appropriate to grant this portion of the Wells Fargo Motion as unresisted.

### *H. Whether Remaining Claims Comport With Rule 12(b)(6)*

Wachovia and Wells Fargo argue that the court should dismiss all of Plaintiffs' non-fraud claims pursuant to Rule 12(b)(6). As stated above, the court found that Counts IV, V, VI and part of Count VII are not fraud claims. Therefore, these claims are subject to Wachovia and Wells Fargo's Rule 12(b)(6) challenge. However, Wells Fargo and Wachovia fail to provide any analysis of this argument. Indeed, the Motions limit this argument to seven lines of text. After reviewing these claims, the court finds that they contain "sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Res. Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). Accordingly, the court shall deny the Motions to the extent they seek to dismiss the remaining claims pursuant to Rule 12(b)(6).

### *VII. CONCLUSION*

In light of the foregoing, the Motions (docket nos. 48 and 62) are **GRANTED IN PART AND DENIED IN PART** as follows:

(1)     Counts I, II and III are **DISMISSED WITH PREJUDICE**;

(2)     Count VII is **DISMISSED WITH PREJUDICE** to the extent it alleges fraud as a basis for a claim for breach of fiduciary duty; and

(3)      Plaintiff Montross's claims against Defendant Wells Fargo are **DISMISSED**

        **WITH PREJUDICE**.

**IT IS SO ORDERED.**

**DATED** this 10th day of September, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA