# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| THOMAS M. AND NANCY N. McGRAW, DONALD HARMS, PATRICIA PESTKA, and DALE MONTROSS,<br><br>      Plaintiffs,<br><br>vs.<br><br>WACHOVIA SECURITIES, L.L.C., as Successor-in-Interest to A.G. EDWARDS, INC., and WELLS FARGO INVESTMENT GROUP, INC., as Successor-in-Merger to SECURITIES CORPORATION OF IOWA,<br><br>      Defendants. | No. C 08-2064-MWB<br><br>**ORDER TO CLARIFY THEORIES OF LIABILITY FOR PURPOSES OF CROSS-MOTIONS FOR SUMMARY JUDGMENT AND TRIAL** |

_____

This case is before the court *sua sponte*. By Order (docket no. 122), filed December 6, 2010, the court set telephonic oral arguments on the parties' January 1, 2010, cross-motions for summary judgment for 10:30 a.m. on Wednesday, December 15, 2010. Further review of the briefing in support of and resistance to those motions has led the court to the conclusion that the pleadings are uncertain as to the theory or theories of liability for the remaining claims and that the parties are, themselves, confused about the theories of liability. The court concludes that clarification of the theories of liability being asserted by the plaintiffs for each of their remaining claims is required, before the court can resolve the parties' cross-motions for summary judgment or otherwise prepare for trial.

Specifically, in the court's view, one of the critical issues in this case is whether each of the plaintiffs' remaining claims against SCI/Wells Fargo and A.G. Edwards/Wachovia is based on a theory that the defendants are *directly liable for their breach of duty* to the plaintiffs or on a theory that the defendants are *vicariously liable for misconduct of Lovegren* (and/or Ballhagen) as their agents. The plaintiffs' Second Amended Complaint is not a model of clarity on this point, and the parties' briefing reflects considerable confusion about the theory or theories of liability.

### 1. *The distinction between direct and vicarious liability*

There is a significant legal distinction between *vicarious liability of a principal for the negligence of an agent*, based on the agent's apparent authority to act on behalf of the agent, *see, e.g., Wilkins v. Marshalltown Med. & Surgical Ctr.*, 758 N.W.2d 232, 236 (Iowa 2008) (considering whether a principal could be vicariously liable for the professional negligence of individual physicians through the doctrine of apparent authority), and *direct liability of the principal for its own negligence*, *i.e.*, its own breach of duty, for example, in failing to supervise an agent who engaged in negligence or other misconduct. *See, e.g., Kiesau v. Bantz*, 686 N.W.2d 164, 171-72 (Iowa 2004) (a cause of action for negligent supervision of an employee allows the injured party to recover because the employer's own wrongful conduct has facilitated in some manner the tortious or wrongful conduct of the employee). Indeed, it is black letter law that a principal's liability under a respondeat superior theory of vicarious liability for acts of an agent has nothing to do with a principal's direct liability for the principal's own negligence that permitted or facilitated misconduct of an agent or employee. *See id.* (causes of action for negligent hiring, supervision, and retention "are separate and distinct from those based on respondeat superior liability, which imposes strict liability on employers for the acts of their employees committed within the scope of their employment"); *see also* 27 AM. JUR.

2

2D EMPLOYMENT RELATIONSHIP § 390, at 842 (2004) ("The theory of direct liability [for negligent hiring, supervision, or retention] is completely separate from the respondeat superior theory of vicarious liability because the cause of action is premised on the wrongful conduct of the employer, such that the employer's negligence was the proximate cause of the plaintiff's injuries."); 30 C.J.S. EMPLOYER-EMPLOYEE § 189, at 268 (1992) ("Aside from respondeat superior, or where the doctrine of respondeat superior is inapplicable, an employer may be liable to a third person for its negligence in the training and supervision of, its employees. The basis of the employer's liability for negligent supervision is direct, not vicarious, liability.").

The distinction between vicarious and direct liability of a brokerage house for misconduct of a broker should have been apparent to the parties here from *Riniker v. Locust Street Sec., Inc.*, 720 N.W.2d 191, 2006 WL 1278751 (Iowa Ct. App. May 10, 2006) (unpublished op.), on which the defendants elsewhere relied. That decision discusses liability of a financial institution for misconduct of an agent based on the financial institution's breach of its own duty, *see Riniker*, 2006 WL 1278751 at *2 ("We first address the district court's conclusion that LSSI owed no duty to the plaintiffs in connection with the sale [by an independent contractor] of the charitable gift annuities in this case."), then separately discusses liability of a financial institution based on the agent's apparent authority from the financial institution. *Id.* at *3 ("We next address the district court's conclusion that there was no agency relationship, either actual or apparent, by which LSSI could be found vicariously liable for Rausch's actions concerning the Mid-America annuities.").

It appears, however, that the distinction between theories of direct and vicarious liability was lost upon the parties here in either the pleading of the plaintiffs' claims or the parties' briefing of the cross-motions for summary judgment.

3

## 2. *Ambiguity of the pleadings*

The plaintiffs' Second Amended Complaint does not clearly identify the basis for liability alleged for any of the remaining claims, with one exception. Count IV of the plaintiffs' Second Amended Complaint, denominated "Negligent Supervision," is the only remaining claim that clearly identifies both the defendants against whom it is brought as "Wells Fargo and Wachovia" and the basis for their alleged liability as a breach of their own duty. It expressly alleges that "[t]he defendants, Wells Fargo and Wachovia, had a duty to supervise and control its employees and agents, specifically Lovegren and defendant Ballhagen"; that "Wells Fargo and Wachovia negligently supervised Lovegren and defendant Ballhagen"; that "Wachovia and Wells Fargo's negligence was a proximate cause of the plaintiffs' damages"; that "[t]he plaintiffs were damaged as a result of the negligence of Wachovia and Wells Fargo"; and that "[t]he conduct of Wachovia and Wells Fargo constituted a willful and wanton disregard for the plaintiffs' rights." Second Amended Complaint, ¶¶ 61-65. Thus, this claim is expressly a claim alleging liability of defendants A.G. Edwards/Wachovia and SCI/Wells Fargo *for their own negligence*, that is, breach of their own duty, in supervising Lovegren and Ballhagen.

The basis for liability in the rest of the claims, however, is considerably less clear. Count V, denominated a claim for "Negligent Misrepresentation," alleges a financial interest of "the defendants," knowledge of "the defendant," intention of "the defendants," a "duty to exercise the care and skill of persons in the same profession" on the part of "the defendants"; and negligence of "the defendants." Second Amended Complaint, ¶¶ 68-73. However, it then alleges that "[t]he conduct of Wachovia and Wells Fargo constituted willful and wanton disregard for the plaintiffs' rights." *Id*. at ¶ 76. Thus, this claim could plausibly be construed as a direct liability claim based on an alleged breach of duty by each of the defendants, with a prayer for punitive damages against only defendants A.G.

4

Edwards/Wachovia and SCI/Wells Fargo, but not against individual defendant Ballhagen (who has been dismissed, in any event). However, the punitive damages allegation, identifying the pertinent defendants as A.G. Edwards/Wachovia and SCI/Wells Fargo, could also plausibly be construed to identify the defendants whose negligence is at issue in Count V to be *only* A.G. Edwards/Wachovia and SCI/Wells Fargo. More importantly, there are no express allegations of actual or apparent authority of Lovegren (and/or Ballhagen) or vicarious liability of A.G. Edwards/Wachovia and SCI/Wells Fargo in this count for actions of alleged agents that would suggest that this count is an attempt to hold A.G. Edwards/Wachovia and/or SCI/Wells Fargo liable on a vicarious liability theory rather than a direct liability (breach of duty) theory.

The same is true for Counts VI and VII. In those counts, allegations are also made about the conduct of "the defendants," but the allegation of a basis for punitive damages expressly relates only to "the conduct of Wachovia and Wells Fargo." *See* Second Amended Complaint, ¶¶ 79-85 (Count VI, denominated "Negligence—Suitability"), Count VII, ¶¶ 88, 90 & 92 (Count VII, denominated "Breach of Fiduciary Duty"). In those counts, there are also no express allegations of actual or apparent authority of Lovegren (and/or Ballhagen) or vicarious liability of A.G. Edwards/Wachovia and SCI/Wells Fargo for actions of alleged agents that would suggest that they attempt to hold A.G. Edwards/Wachovia and/or SCI/Wells Fargo liable on a theory of vicarious liability.

On the other hand, there *are* allegations *in the body of the Second Amended Complaint*, incorporated into each count by reference, *see* Second Amended Complaint, ¶¶ 60, 67, 78, and 87, that the conduct of Lovegren (and perhaps Ballhagen) was cloaked with the apparent authority of A.G. Edwards/Wachovia and SCI/Wells Fargo. *See, e.g.,* Second Amended Complaint, ¶¶ 21 (alleging, *inter alia*, "Lovegren represented to the McGraws and Mr. Harms that the 'special investment' required them to be a

5

'sophisticated' investor and, because they did not qualify, he would invest their assets on their behalf through his own company but under the authority, approval, and oversight of Wells Fargo and/or Wachovia"); 23 (alleging, "To prove, substantiate, legitimize, and reinforce the validity and authority of his statements and actions, Lovegren would utilize his office facilities and co-employees. Sales occurred through the use of the defendants' facilities, through the cloak of the defendants' authority and Lovegren's employment with the defendants, and with the knowledge and assistance of Lovegren's co-employees, including but not limited to defendant Ballhagen."); and 31 (alleging, "Each of the plaintiffs reasonably believed that at all times Lovegren and defendant Ballhagen was [sic] acting as an employee and agent [sic] of Wells Fargo and, later, Wachovia. The plaintiffs relied upon the advice and recommendations from Lovegren and defendant Ballhagen and believed that these individuals were providing them with financial and investment advice and were acting in the plaintiffs' best interests and that the investments were safe, issued, or made through or with the authority and approval of Wells Fargo and Wachovia, respectively."). Thus, there is at least an inference that the plaintiffs intended to plead vicarious liability of the institutional defendants, A.G. Edwards/Wachovia and SCI/Wells Fargo, for the misconduct of Lovegren and individual (and dismissed) defendant Ballhagen, based on the individuals' apparent authority. Consequently, whether the plaintiffs intended or attempted to plead vicarious liability theories in addition to or instead of direct liability theories for each count or for any count is unclear.

### 3. *Ambiguity of the briefing*

The briefing of the cross-motions for summary judgment fails to clarify whether and which claims are based on a theory of breach of duty (the negligence of each of the defendants against whom the claims are brought) and whether and which claims are based on a theory of vicarious liability for actions of agents (Lovegren and Ballhagen) within the

agents' actual or apparent authority. Indeed, the parties' briefing effectively blurs the differences between the two distinct theories of liability.

For example, the defendants cite *Bates v. Shearson Lehman Bros., Inc.*, 42 F.3d 79, 82-83 (1st Cir. 1994), for the proposition that a financial institution owes no duty to non-customers. That citation is, at best, misleading, indicating the defendants' confusion of the theories of vicarious and direct liability. *Bates* did not involve whether or not a financial institution has a *duty* to a non-customer, but whether or not a financial institution can be *liable* for claims of a non-customer for conduct of an agent acting with apparent authority of the financial institution. *Bates*, 42 F.3d at 82-83. Indeed, the word "duty" does not even appear in the text of the decision. Thus, the decision cited by the defendants as standing for the proposition that a brokerage house has *no duty* to non-customers actually involved claims against a brokerage house based on a theory of vicarious liability for misconduct of an agent, not claims based on a theory of direct liability of a brokerage house for its own breach of an alleged duty to non-customers.[1]

Much the same is true of the defendants' reliance on *Riniker v. Locust Street Sec., Inc.*, 720 N.W.2d 191, 2006 WL 1278751 (Iowa Ct. App. May 10, 2006) (unpublished op.), as demonstrating that the defendants cannot be liable to the plaintiffs. For example, the defendants cite *Riniker* under their general heading asserting that the defendants did not owe the plaintiffs any duty with respect to their investments outside any accounts held at defendants, but they do so in a subsection asserting that Lovegren had no authority to act

---

[1]The defendants' citation of *Bates* as standing for a rule of no liability to non-customers is also misleading. In *Bates*, the First Circuit Court of Appeals actually stated the rule to be that a brokerage firm *could be* held liable for fraudulent activity of an agent acting with apparent authority of the brokerage firm, where, *inter alia*, the injured party's belief in the agent's authority to act on behalf of the brokerage firm was reasonable and the agent's position facilitated the consummation of the fraud. *Bates*, 42 F.3d at 82-83.

7

on behalf of the defendants when he allegedly took the plaintiffs' money. *See* Defendants' Brief at 9-10. Thus, the defendants do not recognize that *Riniker* considers distinctly and separately direct liability for breach of a brokerage firm's own duty and vicarious liability of the brokerage firm for the misconduct of an agent based on the agent's apparent authority.

The plaintiffs' responses to these portions of the defendants' motion for summary judgment do nothing to clarify the issues, as the plaintiffs also discuss *Bates* in the context of whether or not the defendants owed a duty to non-customers, yet note that "Bates claimed the broker had apparent authority to act for Shearson." Plaintiffs' Resistance Brief at 8. They also characterize the defendants' citation of *Riniker* as standing for the proposition that firms have no duty to supervise activities merely because they are not "approved," or if a claimant is not a customer, but then discuss the agency of the broker. *Id*. at 7.

It does appear from the plaintiffs' brief in support of their own motion for partial summary judgment that their claims of negligent supervision and negligence as to suitability of investments are premised on the defendants' alleged breach of their own duty, not vicarious liability. Nevertheless, the court finds that the plaintiffs' briefing, in resistance to the defendants' motion for summary judgment and in support of their own motion for partial summary judgment, ultimately does little to clarify their theory of liability for any of the other remaining claims.

### 4. *The need for clarification*

Confronted with the uncertainty of the pleadings as to the theory or theories of liabity and the parties' apparent confusion about the theories of liability, the court concludes that clarification is required, before the court can resolve the parties' cross-motions for summary judgment or otherwise prepare this case for trial.

THEREFORE,

1. The parties **shall** be prepared to address at the oral arguments on the parties' January 1, 2010, cross-motions for summary judgment, set for Wednesday, December 15, 2010, as an initial matter, what theory or theories of liability pertain to each of the remaining claims.

2. **Not later than 12:00 noon on Tuesday, December 14, 2010,** the parties *may* submit supplemental briefs, **not longer than ten pages**, concerning what theory or theories of liability pertain to each of the remaining claims.

**IT IS SO ORDERED.**

**DATED** this 8th day of December, 2010.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA